**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

VISUAL EFFECT INNOVATIONS, LLC,

              Plaintiff,

              v.                            C.A. No. 17-1276-LPS

SONY ELECTRONICS INC.,

              Defendant.

Stamatios Stamoulis, STAMOULIS & WEINBLATT LLC, Wilmington, DE

Ryan E. Hatch, Law Office of Ryan E. Hatch, Los Angeles, CA

       Attorneys for Plaintiff

Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, DE

Gregory S. Gewirtz, Jonathan A. David, Andrew T. Lane, Daniel P. Laine, LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK, LLP, Westfield, NJ

       Attorneys for Defendant

<u>**MEMORANDUM OPINION**</u>

September 30, 2018
Wilmington, Delaware

**STARK, U.S District Judge:**

Plaintiff Visual Effect Innovations, LLC ("VEI") filed suit against Defendant Sony Electronics Inc. ("Sony") on September 7, 2017, alleging infringement of U.S. Patent Nos. 9,699,444 ("the '444 patent"), 9,716,984 ("the '874 patent"), 8,864,304 ("the '304 patent"), and 9,167,235 ("the '235 patent"). (D.I. 1) On November 29, 2017, Sony moved to partially dismiss the Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), based on Sony's contention that the asserted claims of the '444 and '874 patents are not directed to patent-eligible subject matter under 35 U.S.C. § 101. (D.I. 12)

For the reasons stated below, the Court will deny Sony's motion to dismiss.

## I.    BACKGROUND

The claims asserted from the '874 patent and the '444 patent relate to the modification of image frames in a video stream. Sony makes TVs that, according to VEI, modify image frames in a manner that infringes claim 1 of the '874 patent and claim 26 of the '444 patent. (D.I. 1 at ¶¶ 14-19, 26-33)

### A.    The '874 Patent

The '874 patent is entitled "Continuous Adjustable 3Deeps Filter Spectacles for Optimized 3Deeps Stereoscopic Viewing, Control Method and Means Therefor, and System and Method of Generating and Displaying a Modified Video." Claim 1, which provides a method for "generating and displaying modified video," recites:

> A method for generating and displaying modified video, the method comprising:
>
> > (1) acquiring a source video comprising a sequence of image frames;
> >
> > (2) obtaining a first image frame based on a selected one of the image frames of the source video;

1

(3) generating a modified image frame by performing one of:

(i) expanding the first image frame;

(ii) removing a first portion of the first image frame; and

(iii) stitching together the first image frame with a second portion of a second image frame; and

(4) generating a first altered image frame that includes first and second non-overlapping portions, wherein the first non-overlapping portion comprises a first selected portion of the modified image frame, wherein the first image frame does not include the second non-overlapping portion, wherein the modified image frame does not include the second non-overlapping portion; and

(5) generating a second altered image frame that includes third and fourth non-overlapping portions, wherein the third non-overlapping portion comprises a second selected portion of the modified image frame, the second selected portion of the modified image frame being different from the first selected portion of the modified image frame, wherein the first image frame does not include the fourth non-overlapping portion, wherein the modified image frame does not include the fourth non-overlapping portion.

('874 patent, cl. 1)

For example, as shown below, an image frame (3850) can be used to generate two altered image frames (4010 and 4020). (*See* '874 patent, col. 67, l. 50 to col. 68, l. 34).





('874 patent, Figs. 38, 40)

**B.    The '444 Patent**

The '444 patent is entitled "Faster state transitioning for continuous adjustable 3Deeps

filter spectacles using multi-layered variable tint materials."  Claim 26, which provides a method

for "the generation and display of modified image frames and solid-colored bridge frames" (D.I.

16 at 3), recites:

> An apparatus comprising:
>
>> a storage adapted to:
>>
>>> store one or more image frames; and
>> a processor adapted to:
>>
>>> obtain a first image frame from a first video stream;
>>>
>>> generate a modified image frame by performing at least one of expanding the first image frame, shrinking the first image frame, removing a portion of the first image frame, stitching together the first image frame with a second image frame, inserting a selected image into the first image frame, and reshaping the first image frame, wherein the modified image frame is different from the first image frame;
>>>
>>> generate a bridge frame, wherein the bridge frame is a solid color, wherein the bridge frame is different from the first image frame and different from the modified image frame;
>>>
>>> display the modified image frame; and

3

display the bridge frame.

('444 patent, cl. 26)

An example of a bridge frame with image frames is shown below:



Fig. 18C

('444 patent, Fig. 18C)

In the above Figure, the image frames are labeled "A" and "B," and the bridge frame is labeled "C." (*Id*., col. 38:37-51)

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6) Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc*., 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## B. Patentable Subject Matter

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical

phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). "Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). First, courts must determine if the claims at issue are directed to a patent-ineligible concept ("step one"). *See id.* If so, the next step is to look for an "'inventive concept' – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("step two"). *Id.* The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

At step one, "the claims are considered in their entirety to ascertain whether their character ***as a whole*** is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("*Affinity Labs I*") (stating first step "calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter").

In conducting the step one analysis, courts should not "oversimplif[y]" key inventive concepts or "downplay" an invention's benefits. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337-38 (Fed. Cir. 2016); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims' by

looking at them generally and failing to account for the specific requirements of the claims.")

(quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)).

At step two, courts must "look to both the claim as a whole and the individual claim

elements to determine whether the claims contain an element or combination of elements that is

sufficient to ensure that the patent in practice amounts to significantly more than a patent upon

the ineligible concept itself." *McRo*, 837 F.3d at 1312 (internal brackets and quotation marks

omitted).  The "standard" step two inquiry includes consideration of whether claim elements

"simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet*

*Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S.

Ct. at 2359).  "Simply appending conventional steps, specified at a high level of generality, [is]

not ***enough*** to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (internal quotation marks

omitted; emphasis in original).

However, "[t]he inventive concept inquiry requires more than recognizing that each claim

element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350.  In *Bascom*, the Federal

Circuit held that "the limitations of the claims, taken individually, recite generic computer,

network and Internet components, none of which is inventive by itself," but nonetheless

determined that an ***ordered combination*** of these limitations was patent-eligible under step two.

*Id.* at 1349.

The Federal Circuit recently elaborated on the step two standard, stating that "[t]he

question of whether a claim element or combination of elements is well-understood, routine and

conventional to a skilled artisan in the relevant field is a question of fact.  Any fact, such as this

one, that is pertinent to the invalidity conclusion must be proven by clear and convincing

evidence." *Berkheimer*, 881 F.3d at 1368; *see also Aatrix*, 882 F.3d at 1128 ("While the ultimate

determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."); *Automated Tracking*, 2018 WL 935455, at *5 ("We have held that 'whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact.'") (quoting *Berkheimer*, 881 F.3d at 1368).

"Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art.  The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional."  *Berkheimer*, 881 F.3d at 1369; *see also Exergen*, 2018 WL 1193529, at *4 ("Something is not well-understood, routine, and conventional merely because it is disclosed in a prior art reference.  There are many obscure references that nonetheless qualify as prior art.").  Still, "[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, [and] conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law."  *Id.*

As part of the step two "inventive concept" inquiry, the Federal Circuit has looked to the claims as well as the specification.  *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("*Affinity Labs II*") ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface.").  Still, it is not enough just to disclose the improvement in the specification; instead, the Court's task becomes to "analyze the asserted claims and determine whether they ***capture these improvements***."  *Berkheimer*, 881 F.3d at 1369 (emphasis added).  In other words, "[t]o save a patent at step two, an inventive concept must be ***evident in the claims***."  *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d

1322, 1327 (Fed. Cir. 2017) (emphasis added); *see also Alice*, 134 S. Ct. at 2357 ("[W]e must examine the ***elements of the claim*** to determine whether it contains an 'inventive concept.'") (emphasis added); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

At both steps one and two, it is often useful for the Court to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).

Finally, as a procedural matter, the Federal Circuit has observed frequently that § 101 disputes may be amenable to resolution on motions for judgment on the pleadings, motions to dismiss, or summary judgment. *See, e.g.*, *Berkheimer*, 881 F.3d at 1368 ("Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts. Patent eligibility has in many cases been ***resolved on motions to dismiss or summary judgment. Nothing in this decision should be viewed as casting doubt on the propriety of those cases.*** When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law.") (emphasis added); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351-52 (Fed. Cir. 2014) (affirming grant of Rule 12(c) motion for judgment on pleadings for lack of patentable subject matter); *Intellectual Ventures I LLC v. Symantec Corp.*, 2018 WL 1324863, at *1 n.1 (Fed. Cir. Mar. 15, 2018) (affirming grant of summary judgment of patent ineligibility and stating *Berkheimer* "does not compel a different conclusion").

## III.    DISCUSSION

Sony contends that the asserted claims of the '874 patent and the '444 patent are invalid under 35 U.S.C. § 101.  (D.I. 29 at 12)  At step 1, Sony argues that the challenged claims are directed to the abstract idea of "image manipulation."  (D.I. 13 at 1-2)  Sony further argues that the challenged claims lack an inventive concept because the recited processor and storage elements are generic computer components, and the rest of the limitations do not result in the display of the recited images in any unconventional manner.  (*Id.* at 16-17; D.I. 17 at 7-8)  Assuming, without deciding, that the challenged claims are directed to the abstract idea of image manipulation, the Court will nonetheless deny the pending motion because Defendants have failed to show at this stage that the challenged claims lack an inventive concept.

The patents' specifications characterize the claims as unconventional and innovative.  For example, according to the patent specifications, flicker was traditionally considered an undesirable effect.  ('444 patent, col. 40:16-24; '874 patent, col. 60:33-35)  However, "the present invention purposely makes flicker apparent, utilizing the effects of emphatic flicker on the human optical/nervous system to create uncanny time and space illusions."  ('444 patent, col. 40:25-28, '784 patent, col. 60:37-39)  VEI contends that claim 26 "purposefully uses flicker in an unconventional way to create unique benefits" such as "the appearance of continuous motion" and to allow "depth illusions to be experienced by persons without properly functioning binocular vision."  (D.I. 16 at 4-5) (citing '444 patent, col. 40:45-54)  Similarly, VEI contends that "the blending of frames as claimed in the '874 patent has unique benefits over the prior art that provide for a more seamless and fluid appearance of movement."  (D.I. 16 at 6) (citing '784 patent, 60:3-4)  The Court has no basis not to take these factual representations as true at this stage.  *See Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261-62 (Fed. Cir. 2017)

(holding that all factual inferences drawn from the specification must be weighed in favor of non-moving party).

Sony's inventive concept argument relies on its own preferred construction of certain claim terms. For example, Sony argues that claim 1 of the '874 patent fails to provide for a particular application of image manipulation because the "main steps" of the claim do not require a computer. (D.I. 13 at 12-13) Sony also argues that claim 1 does not recite the display of an image because its preamble is not limiting. (*Id.* at 13) Sony further argues that claim 1 of the '874 patent and claim 26 of the '444 patent fail to include an inventive concept because they do not specify the manner in which the recited frames are to be displayed so as to create the visual effects discussed in the patents. (*Id.* at 13, 16-17) All of these contentions presuppose certain constructions of the claim terms – at least one of which VEI explicitly contests. (*See* D.I. 16 at 19) ("VEI therefore contends that the preamble is limiting . . . .") Review of a motion to dismiss does not present an occasion for the Court to have to engage in early claim construction. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323 n.13 (Fed. Cir. 2012). Because the Court may construe the claims to display the recited frames in a manner that provides the benefits described in the specification, and thus to include an inventive concept, Sony has not met its burden at this stage of the case.

In sum, at this time, the Court cannot conclude that, taken as an ordered combination, the claims were well-understood, routine, or conventional methods and apparatuses for image manipulation. *See Aatrix*, 882 F.3d at 1129. Further, the patent-eligibility inquiry could be impacted both by claim construction and by further factual development concerning the use of flicker described by the patents at the time of the inventions. Therefore, the pending motion will

be denied without prejudice to Sony's ability to raise a Section 101 challenge at the summary

judgment stage.

**IV.     CONCLUSION**

An order follows.